UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

———————————————————————————————
                                  )
LUIS MENDONCA,                    )
                                  )
            Plaintiff,            )
                                  )
    v.                            ) C.A. No. 12-850-S
                                  )
CITY OF PROVIDENCE, through its   )
Finance Director, MICHAEL PEARIS; )
PROVIDENCE POLICE DEPARTMENT;     )
CHIEF DEAN ESSERMAN;              )
ROBERT DECARLO; FRANK NEWTON;     )
EVERETT CARVALHO;                 )
MARGARET SCHLAGETER;              )
MATTHEW MULLIGAN;                 )
ROBERT MALAVAGNO;                 )
PAUL A. RENZI; CLIFFORD JONES;    )
JAMES GRENNAN; JANE DOE OFFICER;  )
JOHN DOE OFFICER;                 )
RHODE ISLAND SCHOOL OF DESIGN,    )
through its President, John Maeda; )
JUSTIN WALL; WILLIAM LAPIERRE;    )
JANE DOE OFFICER,                 )
                                  )
            Defendants.           )
———————————————————————————————)

**MEMORANDUM AND ORDER**

WILLIAM E. SMITH, Chief Judge.

    This case arises out of the 2009 arrest of Plaintiff Luis

Mendonca, during which he was struck by a Providence Police

officer, leaving him in a coma.  Now before the Court are two

motions for summary judgment: the Rhode Island School of

Design's ("RISD") Motion for Summary Judgment as to all claims

asserted against it and its public safety officers Justin Wall

and William LaPierre (ECF No. 35), and the City of Providence's

(the "City") and Providence Police Officers' ("PPD Defendants")
Motion for Partial Summary Judgment (ECF No. 34).  For the
reasons set forth below, both motions are GRANTED IN PART and
DENIED IN PART.

I.  Background

The series of events that led to Mendonca's arrest,
assault, and hospitalization began on September 22, 2009.  On
that date, RISD public safety officials, including LaPierre,
began investigating a theft of a student's phone from the RISD
library.  (RISD's Statement of Undisputed Facts ("SUF") ¶¶ 4-5,
ECF No. 36.)  Mendonca was identified by the victim as a
participant in the theft and seen in library video footage on
the night of the theft.  (Id. ¶¶ 4-7.)

On October 20, 2009, Mendonca again tried to enter the RISD
library.  (Id. ¶ 16.)  An employee recognized him from prior
attempts to gain unauthorized access to RISD buildings and
notified RISD public safety.  (Id. ¶¶ 10-14; 16-18.)  Wall, on
patrol that evening, received the dispatch relating to Mendonca.
(Id. ¶ 21.)  The dispatch stated that a larceny suspect was in
the area and provided a description of the suspect.  (Id. ¶¶ 21-
22.)  Shortly thereafter, Wall passed Mendonca, who Wall
believed fit the description in the dispatch.  (Id. ¶¶ 22-23.)

The parties provide vastly different accounts of what
happened next.  Since this order considers RISD and the City's

2

motions, the Court must resolve these disputed facts in favor of Mendonca, the non-moving party. Mendonca asserts that Wall, upon identifying him, drove his car full speed at Mendonca, nearly hitting him. (Pl.'s SUF ¶ 6, ECF No. 40.) When Wall exited his vehicle, Wall grabbed Mendonca by the shirt, slammed him against Wall's vehicle, told him to shut up, asked him for an ID, and inquired if he had any weapons. (Id. ¶ 6.) Wall then handcuffed Mendonca and ordered him to sit on the curb. (Id. ¶ 10; RISD's SUF ¶ 27, ECF No. 36.) During this interaction, Mendonca claims he complied with Wall's requests and that Wall initiated any contact that occurred between the two men. (Pl.'s SUF ¶ 11, ECF No. 40.)

LaPierre arrived at the scene after Wall placed Mendonca in handcuffs. (RISD's SUF ¶¶ 28-30, ECF No. 36.) He instructed Wall to remove the handcuffs and told Mendonca he was free to leave. (Pl.'s SUF ¶ 17, ECF No. 40; RISD's SUF ¶ 38, ECF No. 36.) During this interaction, LaPierre also recognized Mendonca as a suspect in the September 2009 phone larceny and asked for the Providence Police ("PPD") to respond to the scene. (RISD's SUF ¶¶ 35-36, ECF No. 36.)

Mendonca did not linger with the RISD officers. He began to walk away, but turned to see one officer lunging at him. (Pl.'s SUF ¶ 19, ECF No. 40; RISD's SUF ¶¶ 39-40, ECF No. 36.) No physical contact resulted. (Pl.'s SUF ¶ 19, ECF No. 40.)

Mendonca then began to run from Wall and LaPierre and the two RISD officers pursued him. (Pl.'s SUF ¶¶ 19-20, 22, ECF No. 40; RISD's SUF ¶¶ 39, 41, 44, ECF No. 36.)

At some point, various members of the PPD joined the pursuit, though the parties never specify which of the twelve officers named in the Complaint participated. (City's SUF ¶ 3, ECF No. 34-1.)  The search party eventually located Mendonca under a vehicle behind a property on Benefit Street. (Pl.'s SUF ¶ 25, ECF No. 40; City's SUF ¶ 3, ECF No. 34-1; RISD's SUF ¶ 52, ECF No. 36.)  PPD Officer Frank Newton and Wall extracted Mendonca from under the car, at which point Mendonca asserts Newton assaulted him. (Pl.'s SUF ¶ 25, ECF No. 40; RISD's SUF ¶¶ 53, 55, ECF No. 36.)[1]  Then, an undisclosed member of the PPD handcuffed Mendonca, and Newton, with Wall's assistance, began to escort Mendonca to a PPD cruiser. (RISD's SUF ¶¶ 56-57, ECF No. 36.)

Mendonca, however, never made it to the cruiser.  PPD Officer Robert DeCarlo intercepted the three men and proceeded to strike Mendonca several times in the head with his flashlight. (Pl.'s SUF ¶ 26, ECF No. 40; RISD's SUF ¶ 57-58,

---

[1] The parties disagree over how Mendonca was "extracted" from under the vehicle.  RISD asserts that Wall and Newton had to physically remove Mendonca. (RISD's SUF ¶ 55, ECF No. 36.)  Mendonca, however, testified that he voluntarily gave himself up to police when the PPD discovered him. (Pl.'s Dep. 155:22-157:4, Ex. A to RISD's SUF, ECF No. 35-2.)

4

ECF No. 36.)  Mendonca sustained severe injuries from DeCarlo's blows.  (Pl.'s SUF ¶ 30, ECF No. 40.)

Shortly after the October 20, 2009 incident, the City charged Mendonca with two counts of assault relating to his interaction with the RISD public safety officers and with one count of resisting arrest.  (City's SUF ¶ 4, ECF No. 34-1.)  The City dismissed the resisting arrest charge prior to trial.[2]  The City, however, successfully tried and convicted Mendonca in Rhode Island District Court for assaulting Wall and LaPierre. (Id.)  Mendonca appealed both convictions to the Superior Court. The parties resolved the appeal in January 2015, when Mendonca pled nolo contendere to an amended charge of disorderly conduct. (Id.)  The assault charges were dismissed pursuant to R.I. R. Crim. P. 48(a).

Mendonca commenced this civil action in Rhode Island Superior Court on October 12, 2012 and Defendants removed the case to this Court.  (ECF No. 1.)  On March 3, 2013, this Court dismissed all claims against the PPD (ECF No. 15), and on May 28, 2013, the Court dismissed Counts V and VI against former Police Chief Dean Esserman (ECF No. 21).  The City and RISD filed the present motions on August 14, 2015 and August 21,

---

[2] In is his brief, Mendonca asserted that he was not charged with resisting arrest until 60 days after his arrest.  (Pl.'s Opp'n to the City's Mot. 4, ECF No. 38.)  At oral argument, the parties agreed that this was incorrect.  The PPD charged him with resisting arrest the day after his arrest.

2015, respectively.  (ECF Nos. 34 and 35.)  Oral arguments were held on November 20, 2015.

II.  Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  An issue of fact is only considered "'genuine' if it 'may reasonably be resolved in favor of either party.'" Cadle Co. v. Hayes, 116 F.3d 957, 960 (1st Cir. 1997) (quoting Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994)).  When deciding a motion for summary judgment, the court must "examine[] the entire record 'in the light most flattering to the nonmovant and indulg[e] all reasonable inferences in that party's favor.'"  Id. at 959 (quoting Maldonado-Denis, 23 F.3d at 581).

III. RISD's Motion

Mendonca brings five claims against RISD and the RISD public safety officers: Count II asserts an excessive force claim under 42 U.S.C. § 1983 against Wall and LaPierre; Count IV asserts a common law failure to train and supervise claim against RISD; Count V alleges that Wall and LaPierre were part of a civil conspiracy violative of 42 U.S.C. § 1983; Count XI alleges a common law false imprisonment claim against Wall and LaPierre; Count XII alleges common law assault and battery

6

claims against Wall; and Count XIII alleges common law assault and battery claims against LaPierre.  RISD, Wall, and LaPierre have moved for summary judgment on all claims.  The Court considers each claim in turn.

    A.    Count II and Count V: 42 U.S.C. § 1983 Claims Against Wall and LaPierre

RISD principally argues that Counts II and V fail because RISD's public safety officers did not operate under the color of state law, and, thus, 42 U.S.C. § 1983 does not apply to Wall's and LaPierre's conduct.  RISD is correct.  To make out a viable § 1983 claim against a private entity, a plaintiff must show (1) that the conduct complained of transpired under color of state law, and (2) that a deprivation of federally secured rights ensued.  <u>Klunder v. Brown Univ.</u>, 778 F.3d 24, 30 (1st Cir. 2015) ("<u>Klunder II</u>").  Mendonca's § 1983 claims against the RISD Defendants fail on the first element, negating the need to consider the second.

Courts recognize three tests for determining if private conduct transpired under the color of state law.  <u>Id.</u>  The parties agree that the so called "public" or "exclusive" function test applies here.[3]  Under this test, a private entity

---

[3] The other two tests are the "state compulsion test" and "nexus/joint action test."  <u>Klunder v. Brown Univ.</u>, 778 F.3d 24, 30-31 (1st Cir. 2015) ("<u>Klunder II</u>").  Conduct implicates the state compulsion test when the state "has exercised coercive power or has provided such significant encouragement, either

operates under the color of state law when it performs a "public function that has been traditionally the exclusive prerogative of the state." Id. at 31 (internal citations and quotation marks omitted). Both the Supreme Court and First Circuit have explicitly left open whether, and in what context, private security forces constitute state actors. Flagg Bros., Inc. v. Brooks, 436 U.S. 149, 163 n.14 (1978); Klunder II, 778 F.3d at 30 n.5. Other courts, however, have considered the subject and have held that private security officers act under the color of state law where they are "endowed by law with plenary police powers such that they are de facto police officers." Romanski v. Detroit Entm't, L.L.C., 428 F.3d 629, 637 (6th Cir. 2005). Generally, this requires two things: (1) that a government entity grant authority to a private security force; and (2) that the authority include at least one power exclusively reserved for the state. See id.

Romanski provides a good illustration of these requirements. There, the Sixth Circuit considered whether a private casino security guard acted under the color of state law

overt or covert, that the [challenged conduct] must in law be deemed to be that of the State." Id. at 30. The nexus/joint action test "deems a private party a state actor where an examination of the totality of the circumstances reveals that the state has so far insinuated itself into a position of interdependence with the [private party] that it was a joint participant [in the challenged activity]." Id. at 30-31. The parties do not argue that either of these tests is applicable here.

8

when she detained a patron for violating a casino policy. Id.
The court noted that security guards typically have many powers
commonly associated with police, such as the power to detain
trespassers and shoplifters, the ability to carry a firearm, and
the ability to use the firearm in self-defense. Id. at 637-38.
These, however, are not powers exclusively held by the state;
they are powers that the common law and federal constitution
also grant to private entities through doctrines like the
shopkeepers' privilege, and the rights to effectuate citizens'
arrests, to self-defense and to bear arms. Id. Accordingly,
they are not powers that, alone, make a private security guard a
state actor. Id. The court, however, went on to note that the
security guard was also licensed under a Michigan statute that
granted her "the authority to arrest a person without a warrant
as set forth for public peace officers." Id. at 638. The court
held that this "plenary arrest power" exceeded the authority the
common law bestows on private entities and individuals; it was
power traditionally held exclusively by the police. Thus, the
guard acted under the color of state law and the patron who was
detained could sustain a § 1983 claim. Id.; cf. Lindsey v.
Detroit Entm't, LLC, 484 F.3d 824, 829-30 (6th Cir. 2007)
(casino security guard did not act under color of state law
where the guard was not licensed under Michigan law and, thus,
did not have plenary arrest authority). Numerous other cases

have reached the same conclusion as <u>Romanski</u>, holding that private security guards become state actors, for the purpose of § 1983's exclusive function test, only with some sort of state or municipal authorization of plenary police powers.[4]

Both RISD and Mendonca rely heavily on <u>Klunder v. Trs. & Fellows of the Coll. or Univ. in the English Colony of Rhode Island & Providence Plantations, in New England, in Am.</u>, C.A. No. 10-410 ML, 2011 WL 2790178 (D.R.I. July 13, 2011) ("<u>Klunder I</u>"). There, the plaintiff argued that Brown University's police force constituted a state actor under § 1983 as a matter of law. <u>Id.</u> at *1, *4. First, he noted that Brown's police force was

---

[4] <u>See</u> <u>Payton v. Rush-Presbyterian-St. Luke's Med. Ctr.</u>, 184 F.3d 623, 628-30 (7th Cir. 1999) (private hospital security guard acted under the color of law where city ordinance conveyed "all of the powers of the regular police patrol" to the guards); <u>Boyle v. Torres</u>, 756 F. Supp. 2d 983, 994-95 (N.D. Ill. 2010) (University of Chicago police acted under the color of state law where a state statute granted them "the powers of municipal peace officers and county sheriffs" and the officers exercised these powers); <u>Scott v. Nw. Univ. Sch. of Law</u>, No. 98 C 6614, 1999 WL 134059, at *5 (N.D. Ill. Mar. 8, 1999) ("By virtue of the [state] statute," which "delegated [campus police] the same powers as municipal officers but with a more-limited jurisdiction, . . . the [campus] police force was transformed from mere private security guards" into state actors.); <u>cf.</u> <u>Wade v. Byles</u>, 83 F.3d 902 (7th Cir. 1996) (private security guard at a public housing complex did not act under the color of state law where the geographic scope of his authority was limited to the lobby of the complex and his powers — the right to effectuate a citizens' arrest, carry a handgun, and use deadly force in self-defense — were not exclusively reserved for police); <u>Faiaz v. Colgate Univ.</u>, 64 F. Supp. 3d 336, 350-51 (N.D.N.Y. 2014) (unlike other private university security officers in New York, Colgate's security officers were not deputized under state law and thus did not act under the color of state law).

the only non-governmental entity whose agents were defined as "peace officers" by state statute (R.I. Gen. Laws § 12-7-21). Id. at *5. Then the plaintiff cited Brown's website, on which the university publicized its police force as licensed Rhode Island special state police officers who were required to attend a state certified police academy, carry firearms, and were authorized to enforce state statutes. Id. The court, however, denied Plaintiff summary judgment on the issue of whether the security officers acted under the color of state law. While Brown was bestowed with state authority, the court held that questions of fact existed as to whether Brown actually exercised plenary police powers (that would fall under § 1983) or just police-like powers (that would not). Id. at *7.[5]

Mendonca argues that, under Klunder I, his § 1983 claims should survive because questions of fact exist as to whether Wall and LaPierre exercised plenary police powers when they detained Mendonca. (Pl.'s Opp'n to RISD's Mot. 4, ECF No. 39.) Mendonca's argument, however, puts the proverbial cart before the horse. As even the cases on which Mendonca relies demonstrate, the Court need not reach the questions of whether an entity exercised plenary police powers unless the private security forces have received the powers from some sort of state

---

[5] The First Circuit affirmed the decision and declined to determine if Brown's security force was a state actor under § 1983. Klunder II, 778 F.3d at 30 n.5.

or municipal grant.   Klunder I, 2011 WL 2790178 at *5 (university officers deputized municipal officers under Rhode Island law); Romanski, 428 F.3d at 637-38 (casino security guard licensed under a Michigan statute); Payton v. Rush-Presbyterian-St. Luke's Med. Ctr., 184 F.3d 623, 628-30 (7th Cir. 1999) (hospital police force deputized as municipal officers under city ordinance); Boyle v. Torres, 756 F. Supp. 2d 983, 994-95 (N.D. Ill. 2010) (university police force granted plenary police power under state statute); Scott v. Nw. Univ. Sch. of Law, No. 98 C 6614, 1999 WL 134059, at *5 (N.D. Ill. Mar. 8, 1999) (same).   Here, there is no dispute that Wall and LaPierre were not authorized peace officers under Rhode Island law in 2009.[6] And Mendonca has presented no other evidence that RISD officers operated under another state or municipal grant of authority. Unlike in Klunder, Mendonca has not established a threshold element for his § 1983 claims against Wall and LaPierre, entitling RISD to summary judgment on Counts II and V.

B.   Count IV:  Failure to Train Against RISD

The Court need not linger on Mendonca's failure to train claim.   For any claim at summary judgment, the burden of demonstrating the absence of a genuine issue of material fact initially rests with the moving party.   Nat'l Amusements, Inc.

---

[6] In 2013 RISD public safety officers became authorized peace officers like Brown's officers.  See R.I. Gen. Laws 12-7-21(22).

v. Town of Dedham, 43 F.3d 731, 735 (1st Cir. 1995).   But once the moving party has met this burden, "the nonmovant must contradict the showing by pointing to specific facts demonstrating that there is, indeed, a trialworthy issue." Id. (citing Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986) (emphasis added)).

Here, RISD points to record evidence that Wall and LaPierre received training.  (Ex. B to RISD's SUF 6-2 – 6-5, ECF No. 35-3; LaPierre Dep. 124:18-125:25, Ex. C to RISD's SUF, ECF No. 35-4.)   Mendonca does not dispute this evidence, nor does he present evidence that would suggest this training was deficient. Indeed, Mendonca's statement of undisputed facts is completely silent on the training RISD provided – or failed to provide – its officers.  (See Pl.'s SUF, ECF No. 40.)   And Mendonca does not point to any evidence or raise any arguments in his Opposition that call into question the adequacy of RISD's training.   Thus, Mendonca has not established that sufficient evidence exists for a jury to find in his favor on Count IV, entitling RISD to summary judgment.   See DeNovellis v. Shalala, 124 F.3d 298, 306 (1st Cir. 1997) (citing Celotex, 477 U.S. at 322–325).

C.   Count XI:   False Imprisonment Claim Against Wall and LaPierre

To prevail on his false imprisonment claim, Mendonca must show that (1) Wall and LaPierre intended to confine him; (2) Mendonca was conscious of the confinement; (3) Mendonca did not consent to the confinement; (4) the confinement was not otherwise privileged; and (5) Mendonca was detained without legal justification.  Illas v. Przybyla, 850 A.2d 937, 942 n.4 (R.I. 2004); Dyson v. City of Pawtucket, 670 A.2d 233, 238-39 (R.I. 1996).  The Court finds that questions of fact exist as to whether Wall falsely imprisoned Mendonca, but none exist as to LaPierre.

RISD argues that Mendonca's claim fails against Wall because Wall was justified in detaining Mendonca.  (RISD Mem. Supp. Mot. 16-17, ECF No. 35-1.)  Though case law in Rhode Island is sparse, generally, a private person is justified in arresting another for a criminal offense "if an act or omission constituting a felony has been committed and the actor reasonably suspects that the other has committed such act or omission."  Restatement (Second) of Torts § 119 (1965); see In re Paul F., 543 A.2d 255, 257 (R.I. 1988) (citing Restatement (Second) of Torts § 119 at 194 (1965) with approval).  Further, at least one Rhode Island court has held a citizen's arrest lawful where a reliable source informed the citizen that an

14

individual would commit a felony.   See Monteiro v. Howard, 334 F. Supp. 411, 415 (D.R.I. 1971) (police officer outside his jurisdiction effectuated a lawful citizen's arrest when he detained an individual based on information he received from a reliable informant that the individual would be committing a felony).   But regardless of the justification for the arrest, the method for effectuating it must be reasonable under the circumstances.   See In re Paul F., 543 A.2d at 257.

Here, questions of fact exist as to the reasonableness of Wall's detention of Mendonca.   If the events unfolded as Mendonca testified — that Wall charged Mendonca with his vehicle, threw him against the hood, told Mendonca to shut up, and then placed him in handcuffs — jurors could disagree as to the reasonableness of Wall's means of detention.   Accordingly, Wall is not entitled to summary judgment on Count XI.

On the other hand, no questions of fact remain as to LaPierre's involvement in Mendonca's detention.   Mendonca concedes that when LaPierre arrived on the scene, LaPierre ordered Wall to take the handcuffs off Mendonca. (Pl.'s SUF ¶¶ 16-18, ECF No. 40.)   Then, after ordering his release, LaPierre told Mendonca he was free to go.   (Id.)   Based on these undisputed facts, no reasonable jury could find that LaPierre

intended to confine Mendonca, and LaPierre is entitled to summary judgment on Count XI.[7]

>   D.   Count XII and XIII:   Assault and Battery Claims
>        Against Wall and LaPierre

For Mendonca's assault claims to survive summary judgment, he must present evidence that Wall and/or LaPierre (1) intended to cause a harmful or offensive contact with Mendonca or intended to cause an imminent apprehension of such a contact; and (2) that Mendonca suffered such an imminent apprehension. See Restatement (Second) of Torts § 21 (1965); Broadley v. State, 939 A.2d 1016, 1021 (R.I. 2008); Webbier v. Thoroughbred Racing Protective Bureau, Inc., 254 A.2d 285, 290 (R.I. 1969). Mendonca's battery claims require "the consummation of the assault," meaning that the RISD defendants caused an offensive or unconsented touching of Mendonca's body.  Picard v. Barry Pontiac-Buick, Inc., 654 A.2d 690, 694 (R.I. 1995).

RISD concedes that Wall's conduct meets the elements of an assault and battery.   Nevertheless, it argues that Mendonca's claims should be dismissed because Wall acted reasonably in response to Mendonca's conduct.   As detailed above, there are questions of fact as to the reasonableness of Wall's actions.

---

[7] Mendonca seems to concede this point in his Opposition in that LaPierre's name is conspicuously absent from Mendonca's false imprisonment argument, focusing entirely on Wall's conduct.  (Pl.'s Opp'n 6-7, ECF No. 39.)

Thus, RISD's motion as to Count XII – the Assault and Battery claim against Wall – is denied.

Mendonca's claim against LaPierre is a closer call. For the assault claim, Mendonca asserts LaPierre lunged at him and chased him despite telling Mendonca he was free to go. (Pl.'s SUF ¶ 19, ECF No. 40; RISD SUF ¶¶ 39, 44, 50-52, ECF No. 36.) Based on this evidence, Mendonca's assault claim against LaPierre should go to the jury. On the other hand, for his battery claim, Mendonca presents no evidence that LaPierre ever made contact with him. Since this is an essential element of battery, Mendonca's battery claim against LaPierre fails as a matter of law. RISD's motion as to Count XIII, therefore, is granted as to the battery claim but denied as to the assault claim.

IV.  Providence's Motion

The City and PPD Defendants move for summary judgment on four of the seven claims Mendonca asserts against them: Count III, Mendonca's failure to train claim against the City; Count V, Mendonca's 42 U.S.C. § 1983 Civil Conspiracy claim against the PPD Defendants; Count VIII, Mendonca's malicious prosecution claim against the City and the PPD Defendants; and Count X, Mendonca's false imprisonment claim against the City and the PPD Defendants. The Court considers each claim below.

A.   Count III:   Failure to Train and Supervise Against the City

It is unclear whether Mendonca brings a negligent training claim or a constitutional claim under 42 U.S.C. § 1983.   The Court, however, need not resolve this issue because the City is entitled to summary judgment regardless.   First, the specter of waiver hangs heavy over this claim.   Mendonca did not oppose the City's Motion in his brief, and did little to articulate his opposition at oral argument.   This alone provides a basis for granting the City summary judgment.   See Schneider v. Local 103 I.B.E.W. Health Plan, 442 F.3d 1, 3 (1st Cir. 2006) ("It is well-established that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." (internal citation and quotation marks omitted)).

Yet more damning is Mendonca's lack of evidence.   He has pointed to nothing in the record that even references the PPD's training policies, procedures, or protocols.   Nor has he presented evidence as to the specific training the individual PPD Defendants may or may not have participated in.   Thus, there is no evidence in the record to support a failure to train claim under either § 1983 or the common law, entitling the City to summary judgment on Count III.

B.    Count V:    Civil Conspiracy Under § 1983 Against all
      the PPD Defendants

Mendonca's civil conspiracy claim suffers the same fate as
his failure to train claim.    His Opposition does not even
mention the claim, much less develop an argument as to why it
should go to the jury.    And Mendonca has presented no evidence
to suggest that a conspiracy existed between the PPD Defendants
to deprive him of his constitutional rights.    On either basis,
the City is entitled to summary judgment.

C.    Counts VIII and X:    Malicious Prosecution and False
      Imprisonment Against the City and PPD Defendants

The fate of Mendonca's false imprisonment and malicious
prosecution claims depends on whether the PPD Defendants had
probable cause to arrest and charge Mendonca in conjunction with
the events of October 20, 2009.    See Beaudoin v. Levesque, 697
A.2d 1065, 1067 (R.I. 1997) ("Probable cause in our law is a
necessary element in false arrest, false imprisonment, and
malicious prosecution claims."); Vigeant v. United States, 462
F. Supp. 2d 221, 227 (D.R.I. 2006) aff'd, 245 F. App'x 23 (1st
Cir. 2007)(same (collecting cases)).    The PPD Defendants argue
that no questions of fact exist on this point: (1) they had
probable cause to arrest and charge Mendonca with resisting
arrest, and regardless, (2) they claim Mendonca's subsequent
conviction for assaulting Wall and LaPierre demonstrates the

existence of probable cause as a matter of law.  The Court is not persuaded by either of the City's arguments.

Probable cause is "a common sense, nontechnical conception that deals with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." United States v. Vongkaysone, 434 F.3d 68, 73-74 (1st Cir. 2006) (quoting United States v. Meade, 110 F.3d 190, 198 n.11 (1st Cir. 1997)).  It "depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." Devenpeck v. Alford, 543 U.S. 146, 152 (2004).  Accordingly, a probable cause inquiry starts with what the relevant actors knew at the time of arrest or charge, see Fernandez-Salicrup v. Figueroa-Sancha, 790 F.3d 312, 324 (1st Cir. 2015), and turns on whether the information amounted to "information upon which a reasonably prudent person would believe the suspect had committed or was committing a crime." United States v. Vongkaysone, 434 F.3d at 73 (quoting United States v. Young, 105 F.3d 1, 6 (1st Cir. 1997)).

1.   Mendonca's Malicious Prosecution Claim

The City argues that it had probable cause to charge Mendonca with resisting arrest – and, thus, probable cause to defeat Mendonca's malicious prosecution claim - because:

> [T]he plaintiff does not dispute that he ran from a
> Providence police officer (Defendant Newton), failed
> to stop as demanded, hid under an automobile, failed

> to remove himself from that hidden position despite
> being ordered to do so by Newton, to the point where
> he had to be physically removed, by Newton and others,
> from that hiding place. One would be hard-pressed to
> suggest that that does not amount to probable cause to
> charge resisting arrest.

(City's Reply 2, ECF No. 42.) This assertion suffers from two flaws. First, even if the facts recounted above establish probable cause (as they probably do), the City does not cite any evidence to support its assertions. Neither in its brief nor Statement of Undisputed Facts does the City reference deposition testimony, affidavits, or other documents that might support its version of Mendonca's arrest. Instead, the City's only evidence is admissions in Mendonca's Complaint that Mendonca "was pursued by . . . various members of the Providence Police Department," "was found hiding beneath or partially beneath a motor vehicle," and "was arrested." (The City's SUF ¶ 3, ECF No. 34-1.) These assertions do not suggest, as the City argues, that Mendonca knew he was being pursued by the PPD, ignored the PPD's demands to stop running, or failed to remove himself from his hiding place despite being ordered to do so.

Second, the City's claim that it is undisputed that Mendonca resisted arrest is incorrect. At his deposition, Mendonca testified that when he became aware of the PPD, he complied with their requests. (See Pl.'s Dep. 155:22-157:4, Ex. A to RISD's SUF, ECF No. 35-2.) A trier of fact could, of

21

course, discredit Mendonca's testimony and credit any testimony the City presents from its officers. At summary judgment, however, the Court must resolve disputed facts in Mendonca's favor. Consequently, and particularly based on the record before the Court, questions of fact exist as to whether the PPD had probable cause to charge Mendonca with resisting arrest.

The City also argues that it is entitled to summary judgment on Mendonca's malicious prosecution claim as a matter of law because Mendonca was convicted on another charge relating to the events of October 20, 2009. In support of this argument, the City correctly states that, under Rhode Island law, a conviction, even if reversed on appeal, is conclusive evidence of probable cause for that particular charge. See Yates v. Gawel, 37 F.3d 1484 (1st Cir. 1994) (unpublished) (probable cause defeated malicious prosecution claim because plaintiff had "previously been found guilty of the criminal charge in question after trial in the Rhode Island District Court . . . [e]ven though this verdict was reversed after a jury trial in the Rhode Island Superior Court" (emphasis added)); Nagy v. McBurney, 392 A.2d 365, 368 (R.I. 1978) (same). Under this rule, the City would be entitled to summary judgment had Mendonca brought a malicious prosecution claim for the charges on which he was convicted – assault against Wall and LaPierre – even if that charge was overturned on appeal. Mendonca, however, bases his

22

malicious prosecution claim on the City's resisting arrest charge, a charge the City dismissed _before_ trial. None of the cases the City cites consider this precise issue and the Court has found no Rhode Island authority on point.

Perhaps recognizing this dearth of authority, the City directs the Court to the "related crimes doctrine" for support. The doctrine, under both Rhode Island and federal law, relates to _arrests_. It posits that there is probable cause for an arrest if it exists for some crime, even if it was not the crime initially charged. R.I. Gen. Laws § 12-7-5 ("If a lawful cause of arrest exists, the arrest shall be lawful even though the officer made the arrest on an improper ground."); see also Devenpeck v. Alford_, 543 U.S. at 152-54; United States v. Jones_, 432 F.3d 34, 41 (1st Cir. 2005) (it is irrelevant what crime is cited during the arrest because "[i]f, on the facts known to the arresting officers, there was probable cause to believe [the defendant] was committing another crime, the arrest [is] valid"). The City asserts that the Court should extend the doctrine to prosecutors who bring more than one charge against a defendant in the same criminal proceeding. According to the City, if a prosecutor has probable cause to charge an individual with one crime, he or she has probable cause for all other charges.

A number of courts have rejected the City's argument and this Court does the same.   "[I]n contrast to false-arrest claims, probable cause as to one charge will not bar a malicious prosecution claim based on a second, distinct charge as to which probable cause was lacking."  Elmore v. Fulton Cnty. Sch. Dist., 605 F. App'x 906, 915 (11th Cir. 2015); Holmes v. Vill. of Hoffman Estates, 511 F.3d 673, 682 (7th Cir. 2007); Johnson v. Knorr, 477 F.3d 75, 83-84 (3d Cir. 2007); Posr v. Doherty, 944 F.2d 91, 100 (2d Cir. 1991).  As the Seventh Circuit explained, when an individual is arrested, the seizure is the same whether the arrest was based on one or multiple grounds; but once an individual is prosecuted, each additional charge imposes additional costs and burdens.   Holmes, 511 F.3d at 682. Moreover, while the First Circuit has not definitively ruled on the subject, it has acknowledged this trend in other circuits. See Rivera-Marcano v. Normeat Royal Dane Quality A/S, 998 F.2d 34, 38 (1st Cir. 1993).

Based on this case law – particularly without any contrary authority from the Rhode Island Supreme Court – Mendonca's conviction for assault does not entitle the City to summary judgment on Mendonca's malicious prosecution claim.[8]   And, as

_____

[8] Of course, this is not to say that dismissal of a criminal charge prior to trial is evidence of a malicious prosecution. It is not.  Plaintiffs must still establish that law enforcement lacked probable cause to charge an individual with the crime

noted above, the City has not presented sufficient evidence to show no questions of fact exist as to the existence of probable cause for the resisting arrest charge.   Thus, the City's motion is denied as to Count VIII.

   2.   Mendonca's False Imprisonment/False Arrest Claim

   Regarding probable cause for Mendonca's false imprisonment claim, as noted above, both Rhode Island and federal law treat arrests and charges differently.   While neither has extended the "related crimes doctrine" to charges, they both have done so for arrests.   See R.I. Gen. Laws § 12-7-5; Devenpeck, 543 U.S. at 152–54.   Accordingly, "it is irrelevant" what crime the Providence Police Department cited during the arrest because "[i]f, on the facts known to the arresting officers, there was probable cause to believe [Mendonca] was committing another crime, the arrest [is] valid." Jones, 432 F.3d at 41 (emphasis added).

   Here, the City again argues that Mendonca's assault conviction establishes probable cause for Mendonca's arrest. (City's Reply 3, ECF No. 42.)   It argues that the conviction should establish probable cause for any arrest - regardless of the actual crime cited during the arrest - as a matter of law

---

that was ultimately dismissed.   The Court merely declines to hold that, as a matter of law, a conviction on one charge imputes probable cause to other charges dismissed prior to trial.

under the related crimes doctrine.  The Rhode Island Supreme Court, however, has rejected this argument on multiple occasions when determining whether probable cause exists for false imprisonment claims.  Dyson, 670 A.2d at 239 (expressly distinguishing between false imprisonment and malicious prosecution claims and holding that the "[g]uilt or innocence of the underlying charge . . . is not relevant to the determination of whether the arresting officer committed a false imprisonment." (quoting Moody v. McElroy, 513 A.2d 5, 10 (R.I. 1986))).

In light of this, the City must point to evidence sufficient to show it had probable cause to arrest Mendonca – something the City has failed to do for both resisting arrest and assault.  The Court detailed the City's deficiencies relating to the resisting arrest charge above.  For the assault charge, the record is completely silent on whether, at the time of the arrest, the PPD knew of the alleged assault on the RISD officers.  The only evidence before the Court is that RISD told the PPD of Mendonca's suspected larceny and flight.  (See LaPierre Dep. 50:13-20, Ex. C to RISD's SUF, ECF No. 35-4.)  The evidence says nothing of an assault on the RISD officers.  The First Circuit has recently emphasized the impropriety of summary judgment in circumstance like this where "the record is silent as to whether or not [the arresting officers] knew [the facts

giving rise to probable cause] at the time she arrested [the defendant]." Fernandez-Salicrup, 790 F.3d at 324 (emphasis in original). The City's Motion as to Mendonca's false imprisonment claim is, therefore, denied.

V.   Conclusion

For the foregoing reasons, RISD's Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART. The Court GRANTS RISD's Motion as to Count II (excessive force under 42 U.S.C. § 1983 against Wall and LaPierre), Count IV (failure to train against RISD), and Count V (civil conspiracy under 42 U.S.C. § 1983 against Wall and LaPierre). The Court also GRANTS IN PART RISD's Motion as to Counts XI (False Imprisonment) and XIII (assault and battery against LaPierre). Count XI is granted as to LaPierre, but denied as to Wall; Count XIII is granted as to the Battery claim, but denied as to the assault claim. The Court DENIES RISD's Motion as to Count XI (False Imprisonment against Wall) and Count XII (Assault and Battery against Wall).

The City and PPD Defendants' Motion is also GRANTED IN PART and DENIED IN PART. The Court GRANTS the Motion as to Count III (failure to train against the City of Providence), and Count V (civil conspiracy under 42 U.S.C. § 1983 against the PPD Defendants). The Court DENIES the Motion as to Count VIII

(malicious prosecution against the City and PPD Defendants) and Count X (false imprisonment against the PPD Defendants).

Accordingly, the following counts will proceed to trial against the following Defendants:

- Count I, Civil Rights Violation under 42 U.S.C. § 1983 against PPD Officer Robert DeCarlo;

- Count VII, Assault and Battery against PPD Officer Robert DeCarlo;

- Count VIII, Malicious Prosecution against the City of Providence and PPD Defendants;

- Count IX, Intentional Infliction of Emotional Distress against PPD Officer Robert DeCarlo;

- Count X, False Imprisonment Against the PPD Defendants;

- Count XI, False Imprisonment against Wall;

- Count XII, Assault and Battery against Wall;

- Count XIII, Assault against LaPierre.

IT IS SO ORDERED.

_____

William E. Smith
Chief Judge
Date:  March 15, 2016

28